**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRIS PURCELL,** *et al* | : | **CIVIL ACTION** |
| | : | |
| v. | : | NO. 22-469 |
| | : | |
| **ROB HENNIG,** *et al* | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                    **March 30, 2022**

Chris Purcell and Kimberly Groome sue their former attorney Rob Hennig and his law firm from California asking we declare their former attorneys are not entitled to their requested attorney's fee under a retainer agreement they signed shortly before the Hennig attorneys filed a *qui tam* action before us. We granted California Attorney Hennig the privilege of appearing in our Court pro hac vice. Mr. Purcell and Ms. Groome later chose to move forward with lawyers other than the Hennig attorneys. Their new lawyers settled their claims before us in July 2021. Mr. Purcell and Ms. Groome concede their former attorneys are entitled to fees under quantum meruit. But they dispute the former lawyers' entitlement to fees beyond quantum meruit under their detailed retainer agreement. The Hennig attorneys move to dismiss or ask we decline to exercise our jurisdiction under the Declaratory Judgment Act in favor of their yet-to-be-filed breach of contract action in California. Short of dismissal, the Hennig attorneys ask us to order this matter back to our Clerk of Court for random reassignment to another Judge in this District, arguing Mr. Purcell and Ms. Groome improperly designated this case as related to the earlier *qui tam* action. The motion to dismiss is denied as moot as Mr. Purcell and Ms. Groome agreed to amend their allegations early next week to plead more details. We also deny the Hennig attorneys' request to stay in favor of a possible case they may later file in California or reassign the case. We will proceed on Mr. Purcell's and Ms. Groome's amended Complaint when filed early next week.

## I. Alleged facts

Gilead Sciences, Inc. employees Chris Purcell and Kimberly Groome retained California attorney Rob Hennig and his law firm in July 2017 to represent them in a *qui tam* action against their employer Gilead under the False Claims Act, and false claims acts of several states. The parties signed a retainer agreement on July 27, 2017 providing, in relevant part:

Section 1. <u>Representation</u>: Client hereby retains Attorneys to represent him/her in connection with certain potential whistleblower claims under state and Federal False Claims Act (the "Whistleblower Claims" or "Claims") involving his employment with Gilead Sciences as to its fraudulent marketing practices. Attorneys shall have the exclusive right to represent Client in connection with the Claims, as provided in this agreement (the "Agreement").[1]

Section 3.3. <u>Prosecution of Action</u>: Should Client seek to terminate the Agreement and retain another attorney to further prosecute the action or to prosecute the action himself without Attorneys' prior written consent, Client ***agrees to pay Attorneys for the reasonable value of all attorney and paralegal services rendered to Client prior to withdrawal***, taking into account the amount of time spent, Attorneys' standard hourly rate …, and other factors including the degree of risk assumed in the representation. ***At Attorney's option, attorney's fees upon Client's termination of the Agreement will be based on either the reasonable value of past services rendered or the contingency rate*** set out in Section 6 below. Payment to the Attorneys ***shall be made by and through a lien*** on any amount recovered or an alternative arrangement between the parties.[2]

Section 5.3 <u>Reassessment if Affected Governmental Entities Decline to Intervene</u>: In any case where the United States or affected State governmental [sic] has the right to intervene . . . but every affected governmental entity has declined to do so, or has intervened but subsequently withdrawn, Attorneys and Client shall reassess the merits of the action and determine whether it is feasible or appropriate to continue. Both parties must agree to pursue or not to pursue the Whistleblower Claims after all affected governmental entities declines to intervene in, or subsequently withdraws from, all or a substantial part of the Whistleblower Claims.[3]

Section 6. <u>Attorney's Compensation</u>: Client represents that he/she is unable, or prefers not, to retain Attorney on an hourly-fee basis and agrees that Attorneys, in compensation for services rendered pursuant to this Agreement, shall be retained on a contingency fee basis only as set forth below, as well as any statutory attorney's fees awarded in connection with any action arising from the Claims.

6.1 <u>Contingency Percentage in Whistleblower Claims.</u>

…
(b) If neither the United States nor any state governmental entity chooses to intervene with respect to any Whistleblower Claim (a "Declined Whistleblower Claim"), ***and if Attorneys and***

***Client have agreed to continue to litigate the declined claim as provided in Section 5.3 above, Attorneys shall receive a contingent fee equal to forty-five percent (45%)*** *of any and all relator's share awarded to or obtained by Client with respect to the Declined Whistleblower Claim.*[4]

Attorney Hennig filed a *qui tam* complaint under seal in this Court on behalf of Mr. Purcell and Ms. Groome on August 7, 2017 captioned *United States of America, California, Illinois, New Jersey, New York, and Texas ex rel. Chris Purcell and Kimberly Groome v. Gilead Science*, No. 17-3523 (the "*Gilead*" action).[5] He signed a pleading in this District without being admitted to practice law here. We granted Attorney Hennig's third Motion for admission *pro hac vice* in the *Gilead* action almost a year later in reliance upon his sworn declaration he read the Pennsylvania Rules of Professional Conduct, the Local Rules of Civil Procedure, and agreed to be bound by both the Pennsylvania Rules of Professional Conduct and the Local Rules.[6] Mr. Purcell and Ms. Groome later filed a first amended Complaint on July 12, 2018 through counsel in New Jersey; Attorney Hennig and his firm did not sign the first amended Complaint.[7]

The United States continued to seek, and we granted, extensions of time on its intervention deadline and extensions of the seal, including our April 24, 2019 Order granting the United States' motion to extend the time to intervene until October 7, 2019.[8]

### *Mr. Purcell and Ms. Groome terminate Attorney Hennig's representation in the Gilead action in September 2019.*

Mr. Purcell and Ms. Groome terminated Attorney Hennig's representation on September 9, 2019.[9] Mr. Purcell and Ms. Groome retained Attorney Robert Connelly who entered his appearance in the *Gilead* action on September 19, 2019.[10] Attorney Connelly filed a second amended Complaint under seal on behalf of Mr. Purcell and Ms. Groome on September 19, 2019.[11]

*The United States declines to intervene in October 2019, the complaint is unsealed, Gilead is served, and litigation begins.*

The United States declined to intervene in the *Gilead* action on October 7, 2019.[12] We ordered the second amended Complaint unsealed and directed Mr. Purcell and Ms. Groome to serve Gilead Sciences, Inc. The parties began to litigate the *Gilead* action.

*Mr. Purcell and Ms. Groome retain additional counsel in February 2020 and attempt to negotiate with Attorney Hennig on his fee.*

Mr. Purcell and Ms. Groome retained additional counsel, Shepherd Finkelman Miller & Shah, LLP who entered their appearance in February 2020. The parties ratcheted up their litigation efforts throughout 2020 and into 2021.

At some unidentified time after the retention of the Miller Shah firm in February 2020, Mr. Purcell and Ms. Groome attempted to negotiate an agreement with Attorney Hennig and his firm to resolve their interest in attorney's fees if the *Gilead* action settled. They could not reach agreement.[13]

*The Hennig attorneys file a Notice of Lien in the Gilead action.*

Attorney Hennig admitted specially in this District and his firm filed a Notice of Lien in the *Gilead* action on June 9, 2020.[14] The Notice claimed a lien "ahead of all others as to [Mr. Purcell and Ms. Groome's] causes of action asserted in [the *Gilead* action] and on any payment to [Mr. Purcell and Ms. Groome] whether by settlement or judgment rendered in favor of [Mr. Purcell and Ms. Groome in the *Gilead* action], or by any other means or source of payment."[15] The Hennig attorneys asserted the lien "to secure payment both for legal services rendered and for costs and expenses advanced" on behalf of Mr. Purcell and Ms. Groome.[16]

4

### *The Gilead action is settled in July 2021 and Mr. Purcell and Ms. Groome bring this declaratory judgment action.*

The parties settled the *Gilead* action in July 2021. We dismissed the *Gilead* action and closed the case on July 28, 2021.[17] Mr. Purcell and Ms. Groome filed this complaint for declaratory judgment against Attorney Hennig and his firm six months later. Mr. Purcell's and Ms. Groome's counsel represented this case for declaratory judgment is related to the *Gilead* action.[18] The Clerk of Court assigned this matter to our docket consistent with the Local Rules on related cases.[19]

Mr. Purcell and Ms. Groome plead "certain payments" under their settlement with Gilead have been made and "all funds received by [Mr. Purcell and Ms. Groome] and their counsel are now being held in escrow pending resolution of their fee dispute with Attorney Hennig.[20] Mr. Purcell and Ms. Groome did not resolve their dispute with Hennig attorneys continue to dispute the amount of money owed to them as attorney's fees.[21]

**II. Analysis**

Mr. Purcell and Ms. Groome return to us waiting for their payment and seeking a declaration: (1) Attorney Hennig and his firm are not entitled to attorney's fees in the *Gilead* action other than recovery in quantum meruit for the reasonable value of services performed before their September 9, 2019 termination; (2) the specific amount, if any, Attorney Hennig and his firm are entitled to receive in attorney's fees for the reasonable value of their services performed before September 9, 2019 plus reimbursement of costs; and (3) an award of Mr. Purcell's and Ms. Groome's attorney's fees and costs in the declaratory judgment action.

The Hennig attorneys move to dismiss arguing: (1) Mr. Purcell and Ms. Groome fail to allege facts sufficient to support their complaint for declaratory judgment requiring dismissal under Rule 12(b)(6); (2) alternatively, we must decline jurisdiction because the complaint is not properly before us and is more properly heard by a California state court in a yet-to-be-filed state

5

court action; and (3) when filing their declaratory judgment action, counsel for Mr. Purcell and Ms. Groome improperly represented this case is "related to" the *Gilead* action and, in the interest of transparency, fairness, and to avoid the appearance of arbitrariness, we must send the case back to the Clerk of the Court for random re-assignment to another judge in this District.

### A. We deny the motion to dismiss under Rule 12(b)(6) as moot.

Mr. Purcell and Ms. Groome represented they will file an amended complaint on April 4, 2022 in response to Hennig attorneys' motion to dismiss under Rule 12(b)(6).[22] Under Rule 15(a)(1)(B), Mr. Purcell and Ms. Groome are entitled to amend their complaint once as of right within twenty one days of the Henning attorneys' motion to dismiss. Mr. Purcell and Ms. Groome represent they will file an amended Complaint no later than April 4, 2022. We deny the Hennig attorneys' motion to dismiss as moot in reliance upon Mr. Purcell's and Ms. Groome's representations.

### B. The Henning attorneys offer no basis to decline jurisdiction.

The Hennig attorneys, who first agreed to our jurisdiction when seeking admission three times and later filed a lien in the *Gilead* action for their attorney's fees, now ask us to decline jurisdiction in favor of a non-existent case they may file at an undefined time in California. We are not facing a question of our subject matter jurisdiction; we have diversity jurisdiction and the Hennig attorneys do not challenge the parties' diversity and an amount in controversy in excess of $75,000. The issue is whether we should decline to exercise our jurisdiction as within our discretion under the Declaratory Judgment Act.[23] The Hennig attorneys fail to offer a basis to decline our exercise of jurisdiction under the applicable law of this Circuit. We deny their motion.

We begin with the well-settled principle federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them."[24] An exception to this principle is

6

jurisdiction under the Declaratory Judgment Act which provides federal courts "***may*** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[25] The Act's "textual commitment to discretion" by use of the word "may" "'confer[s] … unique and substantial discretion' upon district courts to decide whether to exercise jurisdiction in declaratory judgment actions" allowing us to "abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction."[26]

Our discretion under the Act is "not absolute" and is "bounded and reviewable."[27] We are directed by our Court of Appeals the "'existence or non-existence of pending parallel state proceedings [to the declaratory judgment action],' while not dispositive, is a factor that 'militates significantly' in favor of either declining or exercising jurisdiction, respectively."[28] After determining whether a parallel state proceeding exists, we are directed by our Court of Appeals to consider seven factors[29] "to the extent they are relevant" to determine whether to exercise our discretion under the Act: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; [and] (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata[.]"[30]

There is no dispute the Hennig attorneys are not suing in California, or any state court, to recover their fees and costs. Attorney Hennig instead chose to file a lien for his fees and costs in the *Gilead* action as required by the terms of the parties' fee agreement.[31] Under the law of this

Circuit, the non-existence of a pending parallel state proceeding "militates significantly" in favor of exercising jurisdiction. We are instructed by our Court of Appeals this factor is not dispositive and we must apply the *Reifer* factors.

The Hennig attorneys do not cite our Court of Appeals' guidance in *Reifer*. They do not apply its factors which guide us as to whether we should decline jurisdiction over the complaint for declaratory judgment. The Hennig attorneys instead argue we should decline jurisdiction because: (1) Mr. Purcell and Ms. Groome rushed to file their complaint for declaratory relief before Attorney Hennig could file a breach of contract action in a California state court; and (2) the issue of his attorney's fees implicate California law, which he describes as "complex and finely-calibrated," as well as California's Rules of Professional Conduct, which he believes would be inappropriate for us to consider in adjudicating the parties' fee dispute.

We construe the Hennig attorneys' first argument under the seventh *Reifer* factor – prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata. The Hennig attorneys argue the Supreme Court cautions against exercising discretion under the Act where a plaintiff seeking declaratory relief "attempts to gain a litigation advantage by obtaining an advance ruling on an affirmative defense," quoting *Calderon v. Ashmus*.[32] This case is inapposite. In *Calderon*, the Supreme Court held the petitioner's action for declaratory judgment and injunctive relief is not justiciable within the meaning of Article III's "case or controversy" requirement.[33] The petitioner in *Calderon*, a death-row inmate, sued state officials for declaratory and injunctive relief to determine whether a specific chapter relating to federal habeas proceedings applied to the state of California. The Court found there is no "controversy" because the petitioner did not seek habeas relief, but instead sought a declaration from the district court California *would be* governed by a section of the federal habeas

statute in defending against his habeas petition *whenever* he filed it.[34] The Court rejected the petitioner's requested relief as an attempt to gain a litigation advantage by obtaining an advance ruling on an affirmative defense the state of California may, or may not, raise in opposition to a habeas proceeding.[35] Mr. Purcell and Ms. Groome are not attempting to gain a litigation advantage on an unripe issue; they seek a declaration under the fee agreement between them and the Hennig attorneys – the same attorneys who filed a lien in this Court to preserve their fee interest and who agreed to be bound by our Rules of Professional Conduct.

The Hennig attorneys' reliance on *Endo Pharmaceuticals, Inc. v. Federal Trade Commission*,[36] is similarly inapposite. The Federal Trade Commission voluntarily dismissed an enforcement action against a pharmaceutical company in this District and then refiled the same action in California. The pharmaceutical company sued for a declaratory judgment seeking dismissal of the Federal Trade Commission's enforcement action in California. Judge Diamond dismissed the action, concluding the pharmaceutical company could not use a declaratory judgment action in this District to defend against the enforcement action pending in California. Judge Diamond declined jurisdiction first because he found the pharmaceutical company's declaratory judgment action unripe.[37] He alternatively declined jurisdiction after applying the *Reifer* factors.

The Hennig attorneys curiously excerpt a portion of Judge Diamond's analysis on the seventh *Reifer* factor. Although concerned with the Federal Trade Commission's tactics of voluntarily dismissing an original enforcement action in one forum and then refiling the same action in another forum after it anticipated the possibility of an unfavorable ruling in the first forum, Judge Diamond found the pharmaceutical company's declaratory judgment action "would confound the policy underlying" the Declaratory Judgment Act.[38] Judge Diamond explained the

purposes of the Act are not served when a putative defendant seeks a declaration only to defeat liability in a "subsequent coercive suit."[39] We are not in the same position; there is no other pending action and we are not concerned with ripeness. Mr. Purcell and Ms. Groome seek to resolve the attorney's fees owed to the Hennig attorneys under the lien he and his firm filed before us in the *Gilead* action. Even if we found *Endo Pharmaceuticals* relevant, it goes to only one of the *Reifer* factors. The Hennig attorneys do not analyze the *Reifer* factors.

The Henning attorneys' reliance on *Honeywell International, Inc. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America* is also inapposite.[40] In *Honeywell*, Judge Martini in New Jersey dismissed Honeywell's complaint for declaratory judgment in favor of a second-filed action brought by the union in a Michigan federal court. Honeywell appealed, arguing Judge Martini erred in failing to follow the "first-filed" rule. Our Court of Appeals disagreed and affirmed Judge Martini's dismissal order.[41] Our Court of Appeals explained Judge Martini did not err when he found Michigan had a greater nexus to the dispute than New Jersey and Honeywell's decision to bring an action before providing the required statutory notice under ERISA of its plan to sue suggested it attempted to "beat the Union to the courthouse."[42] Our Court of Appeals did not apply the *Reifer* factors in the *Honeywell* case; it examined Judge Martini's decision under the first-filed rule and not discretion under the Declaratory Judgment Act.[43]

The Hennig attorneys' second argument is based on a suggestion California law on fee agreements is so complex and "finely-calibrated" as to require us to decline jurisdiction under the Declaratory Judgment Act. They also contends it is not appropriate for us to "declare on" California's Rules of Professional Conduct.[44] Neither of these arguments are included in the *Reifer* factors and we need not consider them except to add we are capable of understanding and applying

10

California law.⁴⁵ And we query if California Rules of Professional Conduct would apply when the Hennig attorneys agreed their conduct in the *Gilead* action they filed here would be reviewed and governed by our Rules of Professional Conduct when we granted their motion for admission on their third try.⁴⁶

### C. We will not submit this case for reassignment to another judge in this District.

The Hennig attorneys' argument the declaratory judgment action should be reassigned to another judge as not related to the *Gilead* action lacks merit. Under Local Rule of Civil Procedure 40.1(b)(3)(A), "[c]ivil cases are deemed related when a case filed relates to property included in another suit, or involves the same issue of fact or grows out of the same transaction as another suit, …"⁴⁷ The Hennig attorneys filed a lien in the *Gilead* action for their fees. The proceeds from the settlement of the *Gilead* action are held in escrow pending resolution of the lien. There is no persuasive argument the two matters are unrelated.

Our Court of Appeals rejected a similar motion in *In re Atamian* when the petitioner sought a writ of mandamus compelling the reassignment of his case from one District Court judge to another, randomly selected, District Court judge.⁴⁸ Petitioner argued the assignment of his bankruptcy appeal to a District Court judge assigned to nine other of petitioner's actions violated 28 U.S.C. § 137. Congress in section 137 directs the division of business among district judges and vests the Chief Judge of the District Court with the responsibility for dividing the business of the court "as provided by the rules and orders of the court" and "shall divide the business and assign the cases so far as such rules and orders do not otherwise prescribe."⁴⁹ Our Court of Appeals in *Atamian* held "[w]hether considered under [section 137] or principles of due process, litigants 'do[ ] not have a right to have [their] case heard by a particular judge,' have 'no right to any

11

particular procedure for the selection of the judge,' and 'do[ ] not enjoy the right to have the judge selected by a random draw.'"[50]

The Hennig attorneys argue this case must be randomly reassigned to another judge in the District to further the policies of "transparency, fairness, and avoid[] the appearance of arbitrariness" but do not provide us with a reason why our retention of this case violates these policies. We deny the request for reassignment of this case.

### III. Conclusion

The Hennig attorneys move to dismiss arguing Mr. Purcell and Ms. Groome fail to state a claim. They also ask we stay this matter in favor of a as-yet unfiled case in California or to transfer this case to another Judge in this District because this dispute among diverse parties is not related to the *Gilead* action generating the fees. We deny the Hennig attorneys' motion. Mr. Purcell and Ms. Groome represented they will file an amended Complaint consistent with Rule 15 early next week with more details. We find no grounds to abstain or stay and the Hennig attorneys do not offer a reason under our governing factors. We find no basis to ask the Clerk of Court reassign this case.

---

[1] ECF Doc. No. 6-3 at 6, § 1.

[2] *Id.* at 7, § 3.3 (emphasis added).

[3] *Id.* at 8, § 5.3.

[4] *Id.* at 8–9, § 6.1(b) (emphasis added).

[5] *Gilead* action, No. 17-3523, ECF Doc. No. 1.

[6] *Id.* at ECF Doc. No. 11 at 9 ¶ 4. We denied Attorney Hennig's first two motions for admission as not compliant with the requirements for admission. *Id.* at ECF Doc. No. 12.

[7] *Id.* at ECF Doc. No. 10.

[8] *Id.* ECF Doc. No. 17.

[9] Complaint for Declaratory Judgment, ECF Doc. No. 1, ¶ 13.

[10] *Gilead* action, No. 17-3523, ECF Doc. No. 19.

[11] *Id.*, ECF Doc. No. 21.

[12] *Id.*, ECF Doc. No. 24.

[13] Complaint for Declaratory Judgment, ECF Doc. No. 1, ¶ 20.

[14] *Gilead* action, No. 17-3523, ECF Doc. No. 95.

[15] *Id.*

[16] *Id.*

[17] *Id.*, ECF Doc. No. 282.

[18] Complaint for Declaratory Judgment, ECF Doc. No. 1–2.

[19] Loc. R. Civ. P. 40.1(c).

[20] *Id.*, ECF Doc. No. 1 ¶ 23.

[21] *Id.*, ¶ 24.

[22] ECF Doc. No. 7.

[23] This is also not a question of staying the complaint, as Attorney Hennig and his firm style their motion, or a question of abstention as suggested. *See* ECF Doc. No. 6-1 at 8–9.

[24] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[25] 28 U.S.C. § 2201(a) (emphasis added); *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134 (3d Cir. 2014).

[26] *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F. 4th 192, 196 (3d Cir. 2021) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). The Hennig attorneys do not challenge Mr. Purcell and Ms. Groome's allegation we have subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. ECF Doc. No. 1 ¶ 7.

[27] *DiAnoia's Eatery, LLC*, 10 F. 4th at 196.

[28] *Id.* (quoting *Reifer*, 751 F.3d at 144–45).

[29] There is an eighth factor in the insurance context, not relevant here. *Id.* at 196–97.

[30] *Id.* (citing *Reifer*, 751 F.3d at 146).

[31] *See* ECF Doc. No. 6-3 at ¶ 3.3 requiring payment of fees "shall be made by and through a lien on any amount recovered or an alternative arrangement between the parties." The Hennig attorneys elected to file a lien in the *Gilead* action on June 9, 2020. *See Gilead* action, No. 17-3523 at ECF Doc. No. 95.

[32] 523 U.S. 740, 747 (1998).

[33] *Id.* at 747, 749.

[34] *Id.* at 746.

[35] *Id.* at 747.

[36] 345 F. Supp. 3d 554.

[37] *Id.* at 562–63.

[38] *Id.* at 566.

[39] *Id.* (quoting *Swish Mktg., Inc. v. F.T.C.*, 669 F. Supp. 2d 72, 79 (D.D.C. 2009)).

[40] 502 F. App'x 201 (3d Cir. 2012).

[41] *Id.* at 205–06.

[42] *Id.* at 206.

[43] We also disagree with Attorney Hennig our Court of Appeals in *Honeywell* "has held … 'where the parallel cases involve a declaratory judgment action and a mirror-image action seeking coercive relief … we ordinarily give priority to the coercive action, regardless of which case was filed first." *See* ECF Doc. No. 6-1 at 8. This is not the court's holding in *Honeywell*. The quote attributed as the holding by our Court of Appeal comes from a parenthetical citation to a Sixth Circuit case cited by our Court of Appeals to support its conclusion the district court properly deferred to the second-filed action. *Honeywell Int'l Inc.*, 502 F. App'x at 206.

[44] ECF Doc. No. 6-1 at 8–9.

[45] The cases cited by Attorney Hennig in support of this argument are inapposite. In *J.J. Smith & Co, Ltd., v. Carpenter's Machinery Co., Inc.*, No. 93-4745, 1994 WL 108883 (E.D. Pa. Mar. 30, 1994), Judge DuBois declined to exercise his jurisdiction under the Declaratory Judgment Act in

favor of a pending, parallel state law action. No such action exists here. And Judge DuBois did not find a "lack of federal interest in dispute supports abstention" as represented in Attorney Hennig's brief. *See* ECF Doc. No. 6-1 at 9. Judge DuBois specifically did not address abstention under the *Colorado River* abstention doctrine as unnecessary upon finding he would decline jurisdiction under the Declaratory Judgment Act. *J.J. Smith & Co., Ltd.*, 1994 WL 108883 at *3, n.6. *State Auto. Ins. Cos. v. Summy*, 234 F.3d 131 (3d Cir. 2000) is similarly inapposite. There, our Court of Appeals reversed the district court's exercise of jurisdiction under the Declaratory Judgment Act where an underlying action remained pending in the state court. Our Court of Appeals had a particular concern with the federal declaratory judgment action implicating unsettled questions of state law, counseling against the district court's exercise of jurisdiction. *Id.* at 135–36. Based on the facts, our Court of Appeals found the exercise of jurisdiction by the district court inconsistent with a sound exercise of discretion. *Id.* at 136. Here, we have neither a pending state court action nor a state court action involving unsettled questions of state law.

[46] Our Court of Appeals raised fair questions of procedural v. substantive law in a dispute over attorney's fees when New Jersey adopted a specific rule governing the amount of a contingency fee in *Mitzel v. Westinghouse Elec. Corp.*, 72 F.3d 414 (3d Cir. 1995). We do not opine as to whether our Court of Appeals analysis in *Mitzel* applies at this stage.

[47] Loc. R. Civ. P. 40.1(b)(3)(A).

[48] 247 F. App'x 373 (3d Cir. 2007).

[49] 28 U.S.C. § 137(a).

[50] *In re Atamian*, 247 F. App'x at 374 (quoting *United States v. Pearson*, 203 F.3d 1243, 1256 (10th Cir. 2000)).