**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRIS PURCELL, KIMBERLY** | : | **CIVIL ACTION** |
| **GROOME** | : | |
| | : | |
| **v.** | : | **NO.  22-469** |
| | : | |
| **ROB HENNIG, HENNIG KRAMER** | : | |
| **RUIZ & SINGH P.C.** | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                                    **May 19, 2022**

Two former executives of Gilead Sciences, Inc. from Nevada and Texas hired California lawyer Rob Hennig and his law firm in 2017 to represent them in investigating and filing a possible *qui tam* case challenging their employer's billing practices which they believe defrauded the United States. The executives and the lawyer signed an agreement for a contingent fee but all agreed to negotiate a lower fee payment if they found the percentage to be grossly unfair given the work performed. Attorney Hennig and his firm chose to file the executives' *qui tam* case against Gilead in this District in 2017 under seal and hope the United States would agree to intervene. We specially admitted Attorney Hennig in July 2018 while he filed amended complaints attempting to induce the United States to intervene. The executives eventually changed course and hired another lawyer in Fall 2019 and the United States declined to intervene a couple months later. We began moving towards trial with new counsel although Attorney Hennig never withdrew from representation. The executives could not work out payment for Attorney Hennig's time and he filed a lien in this District in  mid-2020 to ensure his former clients and their new lawyers paid him from a recovery. Replacement counsel resolved the case in July 2021. We dismissed the executives' claims after counsel confirmed the employer paid the settlement to an escrow account

controlled by the replacement lawyers. But the replacement lawyers and the executives still did not resolve Attorney Hennig's lien.

The executives filed this case three months ago asking we declare Attorney Hennig is only entitled to be paid for the fair value of professional services provided on a quantum meruit basis before the executives terminated the relationship. They amended their allegations in response to Attorney Hennig's motion to dismiss their complaint. Attorney Hennig moves again to dismiss.

Both parties agree a court needs to decide the fair value of compensation to Attorney Hennig since they cannot seem to do so. The question is what court. The wrinkle arises from Attorney Hennig filing a complaint in California state court five weeks ago against the executives and another replacement lawyer seeking payment. Attorney Hennig then returned to us four days after his filing in California asking we decline to exercise our jurisdiction over the first-filed case under both the Declaratory Judgment Act or through our ancillary jurisdiction. Attorney Hennig argues the issues of his payment are better resolved in California. He also argues the executives do not state a claim for declaratory relief. We disagree after studying the briefs and oral argument. We exercise our discretion under the Declaratory Judgment Act and our ancillary jurisdiction after applying the variety of concerns recently identified by our Court of Appeals. Counsel represents an ability and mutual interest to promptly distribute undisputed payments to the client executives with complete releases, leaving us with resolving a dispute between a California lawyer admitted here in 2018 and replacement lawyers over their respective shares of a segregated attorney's fee fund in a case fully litigated and resolved before us. There is no uncertain California law which may advise us to defer. Both sides agree we must enter judgment for a fair value of services. The Philadelphia replacement lawyers control the settlement funds. Attorney Hennig filed a lien on our docket to preserve his interests in the fee. We will fully address the merits of his lien through the

declaratory judgment claim and any counterclaims he may wish to assert from his just-beginning California case still awaiting service on one of the executives.

### I.   Alleged facts

Gilead sales executives Chris Purcell and Kimberly Groome retained California attorney Rob Hennig and his firm in July 2017 to represent them in a *qui tam* action against their employer Gilead alleging violations of the False Claims Act.[1] Mr. Purcell and Ms. Groome signed a *qui tam* retainer agreement with Attorney Hennig.[2] Attorney Hennig's fee agreement with Mr. Purcell and Ms. Groome provides, in part: "If neither the United States nor any state governmental entity chooses to intervene" in the planned case, Attorney Hennig "shall receive a contingent fee equal to forty-five percent (45%) of any and all relator's [sic] share awarded to or obtained by" Mr. Purcell and Ms. Groome.[3] The fee agreement also provided in addition to the forty-five percent contingent fee, Attorney Hennig will receive "any statutory attorney's fees that may be awarded pursuant to any litigation with respect to" Mr. Purcell and Ms. Groome's claims.[4] The fee agreement provided for adjustment of the contingent fee for "gross unfairness": " In the event the outcome of this case is such that the attorney's contingent fee described above would render a literal interpretation of the Agreement unreasonable or grossly unfair and unjust to [Mr. Purcell and Ms. Groome], [Attorney Hennig] will make adjustments in the Agreement to make it fair and equitable to both parties."[5]

In early August 2017, Attorney Hennig  prepared a sealed *qui tam* complaint against Gilead Sciences, Inc. in this District filed by attorney Bradford L. Geyer of Geyer Gorey LLP, a law firm in New Jersey.[6] Attorney Hennig signed this complaint without admission *pro hac vice* in this District.[7] Under the False Claims Act, a private citizen, called a "relator," may bring an action on behalf of himself and the United States for violations of the Act.[8] The complaint is filed under seal

and remains sealed until the United States determines whether to intervene and proceed with the action.[9]

### *Mr. Purcell and Ms. Groome became dissatisfied with Attorney Hennig.*

Attorney Hennig mismanaged and mishandled the complaint from the start by: filing a longwinded complaint with claims competent counsel would have understood as having little or no hope of attracting the interest of the federal or state governments; asserting claims regarding HIV and Hepatitis C pharmaceuticals of which Mr. Purcell and Ms. Groome had little or no personal knowledge despite their protestations they had no such knowledge, and instead had knowledge of Hepatitis B drugs; filing a shotgun complaint on a "naïve and counterproductive strategy" in the hope of securing a recovery; failing to serve the initial complaint on the states as required by law causing the states' inability to conduct their own investigation into the claims; failing to collect and preserve electronically stored information; being unprepared, including on one occasion being impaired by alcohol, when meeting with the United States Attorney in Philadelphia; filing an amended complaint continuing to include claims regarding HIV drugs and adding doctors as defendants; and losing interest in the case and ignoring Mr. Purcell and Ms. Groome when it became clear the United States would not intervene.[10]

Mr. Purcell and Ms. Groome terminated Attorney Hennig "for cause" in the *Gilead* action in September 2019. Mr. Purcell and Ms. Groome contend Attorney Hennig did not render competent representation and his conduct had a "grossly detrimental" effect to the value of the *Gilead* action.[11] Mr. Purcell and Ms. Groome then retained California attorney Robert Connelly to represent them to "save their case."[12]

Attorney Connelly and Attorney Geyer filed a second amended Complaint. Three weeks later, the United States declined to intervene. The Miller Shah law firm with an office in our District entered its appearance to assist Attorney Connelly in litigation.[13]

### *New counsel attempt to negotiate resolution of fees with Attorney Hennig and Attorney Hennig files a Notice of Lien.*

At some point in the first half of 2020, the Miller Shah attorneys attempted to negotiate an agreement on fees with Attorney Hennig.[14] Attorney Hennig refused meaningful discussions or negotiations and refused to disclose his firm's lodestar. Attorney Hennig opted to "wait and see" if Mr. Purcell and Ms. Groome achieved a recovery in their action to then "seek to exercise whatever leverage they had to obtain as high an attorneys' fee as possible."[15]

Reaching impasse, Attorney Hennig filed a Notice of Lien on June 9, 2020 in the *Gilead* action representing: "[I]n accordance with the terms of the written fee agreement between Relators and Rob Hennig and [the Hennig firm], Rob Hennig and [the Hennig firm] has and claims a lien ahead of all others as to Relators' causes of action asserted in this action and on any payment to Relators whether by settlement or judgment rendered in favor of Relators in this action, or by any other means or source of payment. This lien is to secure payment both for legal services rendered and for costs and expenses advanced on Relators' behalf."[16] The Notice of Lien purported to put on notice the parties and attorneys of record "not to release any funds to Relators or to Relators' current attorney of record without express consent of Rob Hennig and [the Hennig firm] or other valid proof as to the resolution of this lien."[17]

### *Litigation continued with new counsel, Mr. Purcell and Ms. Groome faced case-dispositive motions, and the parties agree to settle in July 2021.*

In early 2021, Gilead sought spoliation sanctions against Mr. Purcell for failing to preserve his text messages on his electronic devices in the *Gilead* action. Gilead also moved for judgment on the pleadings, arguing the "first-filed" rule barred Mr. Purcell and Ms. Groome's complaint. Gilead argued an earlier-filed case by another relator alleging violations of the False Claims Act for two drugs Attorney Hennig initially included in the initial complaint barred Mr. Purcell and Ms. Groome's second-filed action.

Mr. Purcell and Ms. Groome allege they would not have had to defend against the spoliation sanctions motions filed by Gilead if Attorney Hennig had properly preserved evidence and Gilead would not have had a basis to file a motion for judgment on the pleadings based on the first-filed rule if Attorney Hennig had not expanded the scope of the initial complaint to include drugs outside Mr. Purcell and Ms. Groome's knowledge.[18] With Gilead's motion for judgment on the pleadings pending, and perceiving a threat of their complaint's dismissal, Mr. Purcell and Ms. Groome settled their dispute with Gilead in July 2021. The United States and individual states consented to the settlement and the parties dismissed the case. Mr. Purcell and Ms. Groome contend Attorney Hennig's misfeasance "undoubtedly reduced the settlement value of the case by an enormous amount."[19]

The parties stipulated to the dismissal of all claims and the United States consented to dismissal of Mr. Purcell and Ms. Groome's claims against Gilead.[20] We dismissed the complaint after considering the parties' joint Stipulation of dismissal and the United States' consent to dismissal, and following our conferences with counsel confirming the parties signed ll settlement documents and paid the consideration confirming they resolved all disputes[21] it Gilead made payment under the parties' settlement agreement. Settlement funds for Mr. Purcell and Ms. Groome and their counsel are currently held in escrow pending resolution of this dispute with Attorney Hennig.

### Attorney Hennig and the replacement lawyers cannot resolve the fees owed to Attorney Hennig.

Attorney Hennig swears the value of his firm's services on a loadstar is $367,000 but he demanded payment under the fee agreement and the Notice of Lien filed in the *Gilead* action.[22] The parties went to mediation but could not resolve their dispute.[23] Counsel represented during oral argument there are two different funds currently held in escrow; one representing funds

earmarked as Mr. Purcell's and Ms. Groome's relators' share of the *qui tam* settlement and another representing the statutory fee amount to be distributed between counsel. The relators' fund remains in escrow and has not been paid to Mr. Purcell and Ms. Groome. Both sides agreed the funds earmarked to be released to Mr. Purcell and Ms. Groome should be promptly paid with necessary releases of any claims to claw back. Attorney Hennig agrees to release claims he and his firm may have under the retainer agreement to funds earmarked for Mr. Purcell and Ms. Groome.

### *Mr. Purcell and Ms. Groome ask us to declare Attorney Hennig is entitled only to a quantum meruit value of his services.*

Mr. Purcell and Ms. Groome filed a declaratory judgment action, marked related to the *Gilead* action, seeking a declaration Attorney Hennig is not entitled to any attorney's fees from his representation in the *Gilead* action except in quantum meruit but, because the reasonable value of his services performed before termination is "negative" or "less than zero," he is not entitled to any attorney's fees.[24]

Attorney Hennig moved to dismiss the original complaint arguing: (1) we must exercise our discretion under the Declaratory Judgment Act and stay or dismiss the action in favor of a California state court action Attorney Hennig had not yet filed; (2) dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failing to plausibly state a claim; and (3) "re-designate" the action as unrelated to the *Gilead* action and reassign the action to another judge in this District.[25]

We denied Attorney Hennig's motion asking us to exercise our discretion under the Declaratory Judgment Act and dismiss or stay the action in favor of—at that time—an unfiled California state court action.[26] We denied the Rule 12(b)(6) motion to dismiss as moot after Mr. Purcell and Ms. Groome notified us they intended to amend their complaint.[27] And we denied

Attorney Hennig's request the action be reassigned to another judge as not related to the *Gilead* action.[28]

Mr. Purcell and Ms. Groome filed an amended complaint.[29] Ten days later, Attorney Hennig filed a complaint in California state court against Mr. Purcell, Ms. Groome, attorney Robert Connelly, and John Does.[30] Attorney Hennig alleges claims for breach of contract, breach of the implied duty of good faith and fair dealing, quantum meruit, unjust enrichment, intentional interference with contractual relations, intentional interference with prospective economic advantage, and conversion.[31] At oral argument, counsel advised Mr. Purcell and Attorney Connelly are served with the California state court complaint but Ms. Groome has not been served.

## II.   Analysis

Attorney Hennig moves to dismiss arguing we should exercise our discretion to decline jurisdiction under the Declaratory Judgment Act in favor of his newly-filed California state court complaint against Mr. Purcell, Ms. Groome, Attorney Connolly, and John Does.[32] Alternatively, Attorney Hennig argues if we exercise our jurisdiction, we must dismiss the amended complaint under Rule 12(b)(6).

Mr. Purcell and Ms. Groome respond we should retain jurisdiction after applying the factors provided by our Court of Appeals eight years ago in *Reifer v. Westport Ins. Corp.*[33] They also argue we have ancillary jurisdiction under our Court of Appeals' decision last year in *Butt v. United Board of Carpenters & Joiners of America.*[34]

We agree and will, as within our discretion, exercise our jurisdiction under the Declaratory Judgment Act after applying the *Reifer* factors and under our ancillary jurisdiction to enforce the settlement agreement in the *Gilead* action.

### A. We will retain jurisdiction under the Declaratory Judgment Act after applying the *Reifer* factors.

We begin with the well-settled principle federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given them."[35] An exception to this principle is jurisdiction under the Declaratory Judgment Act which provides federal courts "***may*** declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."[36] The Act's "textual commitment to discretion" by use of the word "may" "'confer[s] … unique and substantial discretion' upon district courts to decide whether to exercise jurisdiction in declaratory judgment actions" allowing us to "abstain from hearing a declaratory judgment action that is properly within the court's subject matter jurisdiction."[37]

Our Court of Appeals' decision in *Reifer* provides an exhaustive analysis of a district court's discretion under the Declaratory Judgment Act. The court instructs two Supreme Court decisions addressing discretion under the Act stand for "at least two broad principles: (1) that federal courts have substantial discretion to decide whether to exercise [Declaratory Judgment Act] jurisdiction, and (2) that this discretion is bounded and reviewable."[38] Guided by the Supreme Court's decisions in *Brillhart v. Excess Insurance Co. of America*[39] and *Wilton v. Seven Falls Co.*,[40] our Court of Appeals has "acknowledged the [Declaratory Judgment Act's] grant of discretion while cautioning that 'what is granted is an opportunity to exercise a ***reasoned*** discretion.'"[41]

Our exercise of discretion must be "sound" and we are "governed by 'considerations of practicality and wise judicial administration.'"[42] Where another action in state court is pending, we must consider our discretion because "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state

court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."[43] To achieve these goals, our Court of Appeals in *Reifer* developed eight, non-exhaustive factors to guide district courts in determining whether to exercise jurisdiction under the Declaratory Judgment Act: "(1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion."[44]

We are also directed to consider additional guidance provided by our Court of Appeals in *State Auto Insurance Cos. v. Summy*, a declaratory judgment action in an insurance case.[45] In *Summy*, our Court of Appeals instructs "when applicable state law is 'uncertain or undetermined, district courts should be particularly reluctant' to exercise [Declaratory Judgment Action] jurisdiction.'"[46]

Last year, our Court of Appeals in *DiAnoia's Eatery* revisited the application of the *Reifer* factors in three actions brought in state court by insured restaurants against their insurers. In each case, the insurer removed the state court complaint to federal court invoking diversity jurisdiction. Each district court exercised its discretion under the Declaratory Judgment Act, abstained from hearing the case, and remanded the actions to state court. Consolidating the cases for appeal, our

10

Court of Appeals concluded the district courts erred in weighing the *Reifer* factors by either misinterpreting certain factors, failing to "squarely address the alleged novelty of state law issues," or did not create a record developing an analysis of the *Reifer* factors sufficient for the Court of Appeals's abuse of discretion review.[47] Guided by our Court of Appeals's analysis in *DiAnoia's Eatery*, we first consider the newly-filed California state action and then the *Reifer* factors. We conclude we will exercise our discretion and retain jurisdiction over Mr. Purcell and Ms. Groome's declaratory judgment action based on both the Declaratory Judgment Act and our ancillary jurisdiction.

Unlike our reasoning almost two months ago when reviewing the motion to dismiss the complaint, we now have a state court action filed by Attorney Hennig in California.[48] Attorney Hennig filed in California nearly two years after he filed a Notice of Lien before us in the *Gilead* action, nearly a year after the *Gilead* action settled, two months after Mr. Purcell and Ms. Groome filed their declaratory judgment action here, and two weeks after our Memorandum denying Attorney Hennig's first motion to dismiss. Attorney Hennig argues his now-filed California state court action militates significantly in favor of our declining jurisdiction under the Declaratory Judgment Act.

Our Court of Appeals in *Reifer* is clear on the significance of a pending parallel state court action: it is not dispositive and is considered "but one factor"—but one of "increased emphasis"— for our consideration.[49] Our Court of Appeals in *Reifer* instructs "it is not a *per se* abuse of discretion for a court to decline to exercise jurisdiction when pending parallel state proceedings do not exist. Nor is it a *per se* abuse of discretion for a court to exercise jurisdiction when pending parallel state proceedings do exist. Rather, the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider."[50] Thus, "the absence of pending

parallel state proceedings militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise. In this circumstance, as part of exercising sound and reasoned discretion, district courts declining jurisdiction should be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors. This same rationale applies when state proceedings do exist. The existence of pending parallel state proceedings militates significantly in favor of declining jurisdiction, although it alone does not require doing so. In this circumstance, as part of exercising sound and reasoned discretion, district courts exercising jurisdiction should be rigorous in ensuring themselves that the existence of pending parallel state proceedings is outweighed by opposing factors."[51]

Not surprisingly, Attorney Hennig argues his new California state court action significantly favors declining jurisdiction under the Declaratory Judgment Act even though he filed the California action after Mr. Purcell and Ms. Groome's action here. Mr. Purcell and Ms. Groome respond we should give no consideration to the California action because it is not yet served on them or Attorney Connelly and we should treat it as a "nullity"; even if not a nullity, the cases relied on by Attorney Hennig to support his argument timing of the state court action is irrelevant are distinguishable; the pending California action is not dispositive under *Reifer*; Attorney Hennig expressly invoked our jurisdiction by filing the Notice of Lien in the *Gilead* action; and there is no unsettled area of California state law to concern us. Mr. Purcell and Ms. Groome argue we, rather than a California state court with no connection to the underlying False Claims Act *Gilead* action, are best positioned to resolve the declaratory judgment.

Attorney Hennig relies on our Court of Appeals's 2000 decision in *Summy* for his argument it is irrelevant his California state action is filed after Mr. Purcell and Ms. Groome's declaratory judgment action. *Summy*, decided thirteen years before *Reifer*, is an insurance case. There, the

parents of a child allegedly poisoned by lead paint in a rental home sued the rental agency for damages in Pennsylvania state court.[52] The rental agency notified its insurer seeking coverage and the insurer denied coverage under the policy's pollution exclusion. The rental agency's attorney disagreed with the denial and told the insurer he intended to seek declaratory judgment in state court to resolve the coverage issue. Two weeks later, and before the insured rental agency's attorney filed a declaratory judgment action in state court, the insurer filed a declaratory judgment action in federal court. The insured rental agency moved to dismiss or stay the federal action asking the district court, in its discretion, decline to exercise jurisdiction. Three days later, the insured rental agency filed its declaratory judgment action in state court.[53] The district court denied the insured's motion to stay without explaining its reasoning.

Our Court of Appeals in *Summy* vacated the district court's decision to, in its discretion, exercise jurisdiction under the Declaratory Judgment Act. Applying *Brillhart* and *Wilton*, our Court of Appeals suggested three "relevant considerations" informing a district court's decision to hear a declaratory judgment action involving insurance coverage issues: "1. A general policy of restraint when the same issues are pending in a state court; 2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion; and 3. Avoidance of duplicative litigation."[54]

These factors, instructed our Court of Appeals, "counsel hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled"; we should "also decline to exercise [our] discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation"; and we "should give serious consideration to the fact [federal courts] do not establish state law, but are

limited to predicting it … especially important in insurance coverage cases," although not restricted to insurance coverage cases.[55] The focus of our Court of Appeals in *Summy* is the concern over a federal court's interference in unsettled questions of state law which are better left to proceed through the state court system.[56]

At the time the district court denied the insured's motion to dismiss or stay, the underlying state law personal injury action and the insured's petition for declaratory judgment pended in state court before the same judge familiar with the insurance policy and evidence regarding lead paint poisoning.[57] Our Court of Appeals found the district court interfered with the state court's management of both cases, failed to promote judicial economy, and failed to promote a federal interest.[58] Almost as an aside, the Court of Appeals considered "irrelevant" the insured's state court declaratory judgment action filed three days after the insurer's federal declaratory judgment action.[59]

Attorney Hennig seizes the "irrelevant" language of *Summy* to support his argument the California contract and tort claims against Mr. Purcell, Ms. Groome, Attorney Connelly, and John Does "militate[] significantly" in our decline of jurisdiction over the declaratory judgment action before us. But this case is nothing like *Summy*; we have no developed state law action, we have no unsettled question of California law, and there is a federal interest in resolving the lien filed by Attorney Hennig in the *Gilead* action. We reject Attorney Hennig's argument his many years delaying California action—seemingly filed to avoid our jurisdiction—puts a heavy thumb on the scale of declining jurisdiction.

**1. The *Reifer* factors militate in favor of retaining jurisdiction.**

But even if we put emphasis on Attorney Hennig's California action, we know from *Reifer* the pending action alone does not require us to decline jurisdiction. We must apply sound and

reasoned discretion in our analysis to ensure ourselves the existence of the pending California outweighs our interest in retaining jurisdiction under the *Reifer* factors. Attorney Hennig argues all the *Reifer* factors weigh in favor of declining jurisdiction. Mr. Purcell and Ms. Groome argue the *Reifer* factors either weigh in favor of retaining jurisdiction or are inapplicable.

Overlaying the *Reifer* factors is our familiarity with this case. There are over 200 docket entries in the *Gilead* case. We addressed multiple motions in the *Gilead* action, including Gilead's sanctions motions for Mr. Purcell's spoliation of text messages and held a hearing on the sanctions motions. Attorney Hennig's conduct in the preservation of Mr. Purcell's text messages is, at least in part, the basis for Mr. Purcell and Ms. Groome's argument Attorney Hennig is not entitled to his fees under the agreement. We are in the best position to evaluate the merits of the declaratory judgment action, not a state court judge in California with no familiarity with the facts of this case. With this in mind, we turn to the *Reifer* factors.

### The first **Reifer** *factor: our declaration will resolve the uncertainty of obligation giving rise to the dispute.*

The first *Reifer* factor considers "the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy." This focus of this factor is whether a declaration "would bring about a 'complete termination of the controversy' between the parties and thereby avoid duplicative piecemeal litigation."[60] Attorney Hennig contends the first *Reifer* factor strongly favors declining jurisdiction because "a real party in interest" is Attorney Connelly, a Californian named as a defendant in Attorney Hennig's California action. Attorney Hennig argues Attorney Connelly is not a party in this declaratory judgment action and we cannot resolve his claims of unjust enrichment and tortious interference with contractual relations against Attorney Connelly here. But we do not have to. The issue giving rise to the declaratory judgment action is the amount Mr. Purcell and Ms. Groome owe Attorney Hennig in legal fees. Whether

Attorney Connelly, who is not a party to the fee agreement, is unjustly enriched or tortiously interfered with Attorney Hennig's contract with Mr. Purcell and Ms. Groome is not an issue bearing on the obligation our declaration will resolve. We find the first *Reifer* factor weighs in favor of retaining jurisdiction.

### The second **Reifer** *factor: Attorney Hennig elected to file the* **Gilead** *action in this District making convenience of the parties a non-issue.*

The second *Reifer* factor considers the convenience of the parties. Attorney Hennig argues he and Attorney Connelly are in California, Mr. Purcell is in Texas, and Ms. Groome is in Nevada, making California convenient. We reject this argument in its entirety. Attorney Hennig elected to file the *Gilead* action here; Attorney Hennig moved, and we granted, his *pro hac vice* admission to practice here; and Attorney Hennig filed a Notice of Lien in the *Gilead* action here. We are hard-pressed to buy the argument this District is now somehow inconvenient to Attorney Hennig, Mr. Purcell, and Ms. Groome. Attorney Hennig brought us here. Mr. Purcell and Ms. Groome have no objection to this District. The second factor weighs in favor of the exercise of jurisdiction.

### The third and fifth **Reifer** *factors: there are no unsettled questions of California law to which we should defer to the California state court.*

The third and fifth *Reifer* factors are related. The third factor considers the public interest in settlement of the uncertainty of obligation. As analyzed in *DiAnoia's Eatery*, this factor focuses on the uncertainty or undetermined issues of state law.[61] At oral argument on its motion, counsel for Attorney Hennig argued the declaratory judgment action is really just a dispute about legal fees between attorneys best left to the California state courts. Counsel did not identify an unsettled question of California law.[62]

We perceive no uncertain or undetermined issues of California law and Attorney Hennig does not contend such uncertainties exist. Mr. Purcell and Ms. Groome ask us to declare Attorney Hennig is entitled to attorney's fees, if at all, under a theory of quantum meruit. There is no dispute

there is a contingency fee agreement between Mr. Purcell and Ms. Groome and Attorney Hennig. Mr. Purcell and Ms. Groome argue where clients discharge their attorney before the contingency occurs, the attorney may only recover in quantum meruit. They rely on a 2016 Pennsylvania Superior Court case *Angino & Rovner v. Jeffrey R. Lessin & Associates*.[63] In *Angino & Rovner*, the Pennsylvania Superior Court held where a client terminates his counsel before the occurrence of the contingency set out in a fee agreement, the terminated attorney has a claim in quantum meruit to recover his fees. This is so even where a contingency fee agreement contains a termination provision governing the termination of the attorney-client relationship before the occurrence of the contingency.[64] California law is no different. It is "well-settled" under California law "where an attorney takes on a case on a contingency basis and that 'attorney [is] discharged with or without cause[,] [he] is entitled to recover the reasonable value of his services rendered to the time of discharge' if the contingency subsequently occurs."[65] Neither counsel at oral argument argued a difference on the quantum meruit theory of recovery between California and Pennsylvania law. With no appreciable difference in the law of both jurisdictions and no unsettled area, the public interest factor in *Reifer's* third factor is not an issue. The third factor weighs in favor of our exercise of jurisdiction.

The fifth factor considers the general policy of restraint when the same issues are pending in a state court. We are directed by our Court of Appeals in *DiAnoia's Eatery* the "policy of restraint" concern is "applicable only when the 'same issues' are pending in state court between the same parties, not when the 'same issues' are merely the same legal questions pending in any state proceeding."[66] Attorney Hennig argues this factor favors declining jurisdiction because the same issues in the declaratory judgment action here are pending in California state court. Mr.

Purcell and Ms. Groome consider this factor inapplicable. For the same reasons applied to the third factor and our analysis of *Summy*, we find this factor weighs in favor of our exercise of jurisdiction.

### The fourth Reifer factor: the availability and relative convenience of other remedies is neutral.

The fourth *Reifer* factor is the availability and relative convenience of other remedies. Attorney Hennig argues this factor supports declining jurisdiction because full relief may be afforded in the California action. Mr. Purcell and Ms. Groome argue if this factor is applicable, there is no "relative" convenience in resolving the parties' dispute in California and our knowledge of the *Gilead* action makes us better equipped to resolve the action than a California state court. We agree and find the fourth factor is either neutral or weighs in favor of exercising jurisdiction.

### The sixth Reifer factor: our efforts here are not duplicative with the California state court action.

The sixth factor is the avoidance of duplicative litigation. Attorney Hennig argues the declaratory judgment action here and his California state court action relate to the same subject matter making our "duplicated effort … pure waste." Mr. Purcell and Ms. Groome consider this factor inapplicable. For the reasons already explained, our effort here is not duplicative; we are most familiar with the *Gilead* action and are best equipped to address the attorney's fee issue.

### The seventh Reifer factor: we do not find "procedural fencing" in a race for res judicata.

The seventh factor is prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*. Attorney Hennig makes much of this factor in his briefing, characterizing the declaratory judgment action filed here a "race to the courthouse" and a method to "exert settlement leverage."[67] We find no support for this argument. Attorney Hennig filed a Notice of Lien in June 2020. The parties concede their attempts to resolve their dispute. Mr. Purcell and Ms. Groome filed their declaratory judgment to resolve their dispute. Attorney Hennig could have filed an action in California when

the *Gilead* action settled nearly a year ago, but chose not to. We do not find the declaratory judgment action before us "procedural fencing" or a race for *res judicata*. This factor weighs in favor of jurisdiction.

Given the *Reifer* factors and our familiarity with the *Gilead* action, judicial economy is best served by our exercise of jurisdiction over the declaratory judgment. Attorney Hennig does not persuade us as to unsettled questions of California law we are cautioned to step into or a state court action with which we will interfere. We retain jurisdiction over this declaratory judgment action.

### B.  We also exercise ancillary jurisdiction.

Mr. Purcell and Ms. Groome argue we have another independent basis for jurisdiction: ancillary jurisdiction because Attorney Hennig's Notice of Lien prevents the full execution of the settlement in the *Gilead* action. The exercise of ancillary jurisdiction is discretionary.[68]

Mr. Purcell and Ms. Groome rely on a recent case from our Court of Appeals, *Butt v. United Brotherhood of Carpenters & Joiners of America*.[69] In that case, our Court of Appeals held the district court had ancillary jurisdiction over an attorney's charging lien against settlement proceeds in cases dismissed with prejudice by the district court upon settlement.[70] "[A]ncillary enforcement jurisdiction enforcement jurisdiction exists 'to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'"[71] The court held the district court properly exercised its ancillary enforcement jurisdiction to an attorney's fee dispute raised for the first time after dismissal of the underlying case, and where the court did not explicitly retain jurisdiction, "but was necessary to effectuate the Court's judgment."[72]

Attorney Hennig argues ancillary jurisdiction in the *Gilead* action is "misguided" because the parties' dispute is really a fee-splitting dispute between attorneys and we need not hold a "contentious mini-trial parallel to the California action" to effectuate the *Gilead* settlement. At oral

argument, counsel advised us there are two different funds currently held in escrow: one representing funds earmarked as Mr. Purcell's and Ms. Groome's relators' share of the *qui tam* settlement and another representing the statutory fee amount to be distributed between counsel. Currently, the relators' fund remains in escrow and has not been paid to Mr. Purcell and Ms. Groome. Counsel for Attorney Hennig does not dispute *Butt* applies; instead, he argues Mr. Purcell and Ms. Groome should be paid, ostensibly under *Butt*, leaving only a lawyer qua lawyer dispute better resolved in California. We have an interest in effectuating the settlement in the *Gilead* action and, under *Butt*, exercise our ancillary jurisdiction, another independent basis to keep this case here.

### C.  Mr. Purcell and Ms. Groome state a claim for declaratory relief.

Attorney Hennig alternatively moves to dismiss the amended Complaint under Rule 12(b)(6). Attorney Hennig first argues the amended Complaint contains argumentative, conclusory, and inflammatory allegations in violation of Rule 8's "short and plain statement of the claim" requirement, repeats "false assertions" Attorney Hennig and his firm "might be entitled to no recovery for their performance of legal services in *Gilead*," and fails to allege facts Attorney Hennig would not be entitled to fees.[73] Attorney Hennig also takes issue with Mr. Purcell and Ms. Groome's legal theory: Mr. Purcell and Ms. Groome contend Attorney Hennig "deserve[s] no recovery" of fees based on a theory of quantum meruit. They then allege because the reasonable value of services is "negative," meaning, "less than zero in value since [his] representation of [Mr. Purcell and Ms. Groome] was to the detriment of [Mr. Purcell and Ms. Groome] and the value of their claims asserted in the *Gilead* action," Attorney Hennig is not entitled to receive attorney's fees.

Attorney Hennig undisputedly disagrees with the allegations and disagrees with the legal argument. But this is not a Rule 12(b)(6) argument. The purpose of Rule 12(b)(6) is to test the sufficiency of the factual allegations in a complaint.[74] There are sufficient factual allegations. Attorney Hennig may challenge these allegations based on undisputed fact issues at the summary judgment stage or on disputed facts at trial.

### III.    Conclusion

We deny Attorney Hennig's motion to dismiss.

---

[1] 31 U.S.C. §§ 3729–3732. The False Claims Act imposes liability on any person who "knowingly presents, or causes to be presented" to the United States "a false or fraudulent claim for payment or approval," "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," conspires to violate the Act, or other prohibited conduct. *See* 31 U.S.C. § 3729(a)(1).

[2] Mr. Purcell is a citizen of Texas. Ms. Groome is a citizen of Nevada. ECF Doc. No. 10 ¶¶ 3, 4.

[3] *Id.* ¶ 40.

[4] *Id.* ¶ 41.

[5] ECF Doc. No. 6-3 at 9, ¶ 6.3 (using the pagination assigned by the CM/ECF docketing system).

[6] Referred in this Memorandum as the "*Gilead* action," No. 17-3523. Attorney Hennig entered an oral agreement with the Geyer Gorey firm to split legal fees on a 50-50 basis—an agreement never disclosed to Mr. Purcell or Ms. Groome. ECF Doc. No. 10 ¶ 14.

[7] Attorney Hennig did not move for admission *pro hac vice* in the *Gilead* action until nearly a month later. We denied his motion and a later motion for *pro hac vice* admission as non-compliant with the requirements for admission under our policies and procedures. *See Gilead* action at ECF Doc. Nos. 3, 9. We granted Attorney Hennig's third Motion for admission *pro hac vice* in the *Gilead* action almost a year later in reliance upon his sworn declaration he read the Pennsylvania Rules of Professional Conduct, the Local Rules of Civil Procedure, and agreed to be bound by both the Pennsylvania Rules of Professional Conduct and the Local Rules. *See Gilead* action at ECF Doc. No. 12.

[8] 31 U.S.C. § 3730(b).

[9] 31 U.S.C. § 3730(b)(2).

[10] ECF Doc. No. 10 ¶¶ 15–26.

[11] *Id.* ¶ 27.

[12] *Id.* ¶ 28.

[13] *Id.* ¶¶ 29–31.

[14] *Id.* ¶ 32.

[15] *Id.*

[16] *Gilead* action, ECF Doc. No. 95.

[17] *Id.*

[18] ECF Doc. No. 10 ¶¶ 18, 34, 36.

[19] *Id.* ¶ 38.

[20] *Gilead* action, ECF Doc. No. 281.

[21] *Gilead* action, ECF Doc. No. 282.

[22] ECF Doc. No. 10. ¶ 42.

[23] *Id.* ¶ 44.

[24] ECF Doc. No. 1 ¶ 30.

[25] ECF Doc. No. 6.

[26] ECF Doc. Nos. 8, 9.

[27] ECF Doc. Nos. 7, 8, 9.

[28] ECF Doc. Nos. 8, 9.

[29] ECF Doc. No. 10.

[30] ECF Doc. No. 11-2.

[31] *Id.*

[32] ECF Doc. No. 11.

[33] 751 F.3d 129 (3d Cir. 2014).

[34] 999 F.3d 882 (3d Cir. 2021).

[35] *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

[36] 28 U.S.C. § 2201(a) (emphasis added); *Reifer*, 751 F.3d at 134.

[37] *DiAnoia's Eatery, LLC v. Motorists Mut. Ins. Co.*, 10 F. 4th 192, 196 (3d Cir. 2021) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286–87 (1995)). Attorney Hennig does not challenge Mr. Purcell and Ms. Groome's allegation we have subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000. ECF Doc. No. 10 ¶ 9.

[38] *Reifer*, 751 F.3d at 140.

[39] 316 U.S. 491 (1942).

[40] 515 U.S. 277 (1995).

[41] *Reifer*, 751 F.3d at 140 (emphasis added) (quoting *Bituminous Coal Operators' Assoc. v. Int'l Union, United Mine Workers of Am.*, 585 F.2d 586, 596 (3d Cir.1978), *abrogated on other grounds by Carbon Fuel Co. v. United Mine Workers of Am.*, 444 U.S. 212 (1979)).

[42] *Reifer*, 751 F.3d at 139 (quoting *Wilton*, 515 U.S. at 288).

[43] *Id.* (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)).

[44] *Reifer*, 751 F.3d at 146 (footnote omitted).

[45] 234 F.3d 131 (3d Cir. 2000) as amended (Jan. 30, 2001).

[46] *DiAnoia's Eatery*, 10 F.4th at 197 (quoting *Reifer*, 751 F.3d at 141).

[47] *Id.*, 10 F.4th at 196, 211.

[48] We disagree with Mr. Purcell and Ms. Groome our earlier memorandum denying Attorney Hennig's motion to dismiss is law of the case (ECF Doc. No. 8). At that time, we did not have a pending California state court action. A pending state law action is a significant factor we must consider when applying *Reifer*. We cannot simply ignore the now-filed California state court action.

[49] *Reifer*, 751 F.3d at 144.

---

[50] *Id.*

[51] *Reifer*, 751 F.3d at 144–45; *DiAnoia's Eatery*, 10 F.4th at 196.

[52] *Summy*, 234 F.3d at 131.

[53] *Id.* at 132.

[54] *Id.* at 134 (citation omitted) (footnote omitted).

[55] *Id.* at 135.

[56] *Id.* In *Summy*, the application of the pollution exclusion to deny coverage was unsettled by Pennsylvania state courts; only two Pennsylvania trial courts ruled on the issue and, in one case, an insured petitioned the Pennsylvania Supreme Court for allocator pending at the time the district court assumed jurisdiction under the Declaratory Judgment Act. *Id.* at 132.

[57] *Id.* at 135.

[58] *Id.* at 136.

[59] *Id.*

[60] *DiAnoia's Eatery*, 10 F.4th at 205.

[61] In *DiAnoia's Eatery*, our Court of Appeals analyzed novel questions of state insurance law regarding business losses caused by the COVID-19 pandemic *Id.* at 207–08.

[62] At oral argument, we asked counsel for Attorney Hennig to explain his argument the third and fifth *Reifer* factors weigh in favor of transfer to California state court. Counsel explained Mr. Purcell and Ms. Groome originally invoked California's Rules of Professional Conduct with regard to unconscionable fees. But in their amended Complaint, they invoked Pennsylvania's Rules of Professional Conduct. Counsel for Attorney Hennig believes there is a difference between California's and Pennsylvania's Rules of Professional Conduct, weighing in favor of transferring this action to California state court.

[63] 131 A.3d 502 (Pa. Super. Ct. 2016).

[64] *Id.* at 508–10.

[65] *Marez v. Bassett*, No. 06-118, 2011 WL 13213631, at *1 (C.D. Cal. Dec. 28, 2011) (citing *Fracasse v. Brent*, 6 Cal. 3d 784, 792 (1972) and *Mardirossian & Associates, Inc. v. Ersoff*, 153 Cal. App. 4th 257, 272 (2007)).

[66] *DiAnoia's Eatery*, 10 F.4th at 206 (citation omitted).

[67] ECF Doc. No. 11-1 at 12.

[68] *Raab v. City of Ocean City, New Jersey*, 833 F.3d 286, 295 n.5 (3d Cir. 2016).

[69] 999 F.3d 882 (3d Cir. 2021).

[70] *Id.* at 886.

[71] *Id.* at 887 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380  (1994)).

[72] *Id.* at 889.

[73] ECF Doc. No. 11-1 at 14.

[74] *Sanders v. United States*, 790 F. App'x 424, 426 (3d Cir. 2019).